IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Stephen M. Hawkins, ) | |
| ) | Civil Action No. 2:12-384-DCN-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| College of Charleston, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the defendant's motion to dismiss. [Doc. 37.] The plaintiff alleges claims for discrimination in violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*.; 28 C.F.R. Part 35 Section 504 of the Rehabilitation act of 1973; 34 C.F.R. Part 104; and the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq*.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

The plaintiff is a male allegedly living with cystic fibrosis, anxiety, and depression. During all relevant times, from Fall 2009 until his eviction from campus housing, the plaintiff was enrolled, with the defendant, as a student receiving room and board, on scholarship. While enrolled as a student, the defendant, through its agents, allegedly discovered that the plaintiff may have been cutting himself. The Resident Hall, Director Margaret Travis, prepared three incident reports with regards to the plaintiff and his alleged behavior, which raised questions about his fitness to live in resident housing.

Notwithstanding, the plaintiff's medical provider certified to the defendant that the plaintiff's depression was under control and that he was not suicidal. (Pl. Ex. B at 53.) But, after receiving complaints from other students about being uncomfortable living with the plaintiff, and after the plaintiff had been transported by EMS on January 31, 2010 and February 9, 2010, the defendant is alleged to have evicted the plaintiff from the residence hall, February 10, 2010. The Vice President of Student Affairs upheld the decision on February 12, 2010. (Pl. Ex. G.)

As a result, the plaintiff allegedly could not continue enrollment at the college, lost his scholarships, and was unable to complete his education with the defendant.

The defendant alleges that during all relevant times the plaintiff had an active Facebook account, on which he has admitted to posting details about his life, including his mental health (Pl. Dep. at 337-38). The plaintiff, however, has also admitted to intentionally deleting nearly all such content. The defendant seeks dismissal for the destruction of evidence.

## **DISCUSSION**

The defendant contends that the plaintiff's case should be dismissed for his spoliation of evidence. The Court disagrees that dismissal is an appropriate sanction under the circumstances.

Spoliation is the "destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). The Court's ability to impose sanctions for spoliation stems from its "inherent power to control the judicial process and litigation." *Id*. The power "is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Id*. (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Accordingly, "'the applicable sanction should be molded to serve the prophylactic, punitive,

and remedial rationales underlying the spoliation doctrine.'" *Id*. (quoting *West*, 167 F.3d at 779). The district court has "broad discretion in choosing an appropriate sanction for spoliation" and the court's decision is reviewed on appeal for abuse of discretion. *Id*.

Sanctionable spoliation requires evidence of three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Cytec Carbon Fibers, LLC v. Hopkins*, 2012 WL 6044778, at *2 (D.S.C. Oct. 22, 2012) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107-108 (2d. Cir. 2002).

Critically, a party has a duty to preserve evidence during litigation and at any time "before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *See Silvestri*, 271 F.3d at 591.

Truthfully, the extent to which spoliation is actually present is somewhat a collateral issue. Reasonably, the defendant has only now asked for *dismissal* of the case based on spoliation and not any lesser sanction. As the Honorable David C. Norton has noted, "[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" David C. Norton, *et al., Fifty Shades of Sanctions: What Hath the Goldsmith's Apprentice Wrought?*, 64 S.C.L.R. 459, 466–68 (2013). The ultimate evidentiary effects of the plaintiff's spoliation, if any, therefore, are down the road, so to speak, whether in jury charge or elsewhere, so long as dismissal is not now appropriate. So, the Court could, in essence, presume, without deciding, the presence of spoliation, as alleged, and consider, in isolation, any recommendation on whether the evidence presently supports a drastic remedy in dismissal. But, for precaution, the Court would say some about whether spoliation has actually occurred.

There are three alleged incidents of spoliation. The first occurred over "several days" between "March to late June" 2010 ("2010 Incident"). (Pl. Dep. at 324-26.) During this time frame, the plaintiff is alleged to have deleted Facebook content, from August 2009 through February 2010. (Pl. Dep. at 337-38.) Second, the defendant contends that sometime in February 2013, the plaintiff deleted all Facebook content from roughly early 2012 through February 2013. (Pl. Dep. at 312.) Lastly, the defendant contends that the plaintiff at some other time continued to delete Facebook content from early 2012 through October 29, 2012. It is not entirely clear to the Court why the last two incidents are not overlapping or redundant, but as will be discussed, it is of no consequence for purposes of the present motion.

There is some disagreement over whether the 2010 Incident satisfies the first spoliation element. The defendant contends that the plaintiff's duty to preserve the Facebook content was implicated as of the alleged spoliation, in March to June 2010, because the plaintiff had already contacted the ACLU, on February 24, 2010, for discrimination against him on account of his disability.

The Court need not decide it.

Whether or not the plaintiff was under a duty to preserve the account content, in June of 2010, the February 2013 Incident plainly satisfies all three spoliation criteria. The plaintiff admits that he deleted the 2012 Facebook content because his account had allegedly been hacked numerous times. (R. at 312.) He concedes that he deleted the content of his own initiative and intentionally. *Id*. Critically, this case was filed in February 2012. [Doc. 1.] Under federal common law, a party who reasonably anticipates litigation has a duty to preserve material evidence that may be relevant to the litigation. *Silvestri*, 271 F.3d at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Moreover, sometime around the possible time of deletion, the parties were actively negotiating the

delivery of such content, even to the point of Court Order, requiring the same. [Doc. 33.] The plaintiff's duty to preserve had clearly been implicated.

The plaintiff complains that, notwithstanding his intentional deletion under circumstances where preservation was required, the content was not relevant. This is not a reasonable view. For starters, and as the defendant emphasizes, the destruction of the evidence itself raises a presumption of relevance that has not been rebutted. *See Cytec Carbon Fibers LLC*, 2012 WL 6044778, at *3. Secondarily, the plaintiff has admitted that he discussed his alleged depression, anxiety, and disability in the deleted material. (Pl. Dep. at 337-38.) His emotional well-being and health are squarely at issue in this case, even if it were not the core basis of any claim or decision of the defendant to evict him.

The parties have also debated the content's relevance in light of the balancing test inherent in the Rules of Evidence. But, whether any particular element of the online content would have ultimately been admissible seems somewhat beside the point. Indeed, because it no longer exists, that question can hardly be asked. And, so whether any part of that content may have hypothetically proven too prejudicial to be heard at trial does not make that same corpus of theoretical evidence legally irrelevant now for purposes of analyzing whether its still, in total, the type of information that might have reasonably reflected on the claims and defenses at issue in this case such that it should not have been destroyed. It is.

Although there is some split of authority, other courts have viewed Facebook and personal, online content relevant where mental health is at issue. "[W]here a plaintiff puts [his] emotional well-being at issue when asserting claims of . . . discrimination as in this action, some courts have found that 'Facebook usage depicts a snapshot of the user's relationships and state of mind at the time of the content's posting.'" *Reid v. Ingerman Smith LLP,* 2012 WL 6720752, at *1 (E.D.N.Y. Dec. 27, 2012) (quoting Bass v. Miss Porter's School, 2009 WL 3724968, at *1 (D. Conn. 2009). "It is reasonable to expect severe

5

emotional or mental injury to manifest itself in some SNS content, and an examination of that content might reveal whether onset occurred, when, and the degree of distress." *E.E.O.C. v. Simply Storage Management*, LLC, 270 F.R.D. 430, 435 (S.D. Ind. 2010); *see also Robinson v. Jones Lang LaSalle Ams., Inc.*, 2012 WL 3763545, at *1 (D. Or. Aug. 29, 2012) (finding it "reasonable to expect severe emotional or mental injury to manifest itself in some social media content"); *Sourdiff v. Texas Roadhouse Holdings, LLC*, 2011 WL 7560647, at *1 (N.D.N.Y. Oct.24, 2011) (directing plaintiff to produce social networking information related in any way to her emotional or mental state).

The plaintiff contends that the representations of the plaintiff's medical provider, Dr. Ranjay Halder, somehow establish indisputably that the plaintiff could function autonomously, was not suicidal, and, therefore, that he should not have been removed from the residence. But, Dr. Halder's view is not legally impenetrable. Certainly the defendant is permitted opposition evidence. The Facebook content, in part, may have qualified.

Spoliation is present.

The issue of remedy, however, remains.

"If spoliation has occurred, then a court may impose a [wide] variety of sanctions, ranging from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs." *Goodman v. Praxair Servs., Inc.* 632 F. Supp. 2d 494, 506 (D. Md. 2009). Rule 37 of the Federal Rules of Civil Procedure lays out a host of possible penalties, which include directing that facts be taken as true for purposes of the action, prohibiting the disobedient party from supporting or opposing claims or defenses, striking pleadings, staying the proceedings, dismissing the action, rendering a default judgment, or treating the disobedience as contempt of court. Fed. R. Civ. P. 37(b)(2)(A).

The Honorable David C. Norton has summarized this Circuit's view of the law of spoliation as it relates to high sanction:

> **The harsher sanctions of dismissal and default judgment require a showing of "bad faith or other 'like action,' " unless the spoliation was so prejudicial that it prevents the non—spoliating party from maintaining his case.** *See Silvestri*, 271 F.3d at 583 (quoting *Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1047 (4th Cir.1998)); David C. Norton, et al., Fifty Shades of Sanctions: What Hath the Goldsmith's Apprentice Wrought?, 64 S.C.L.R. 459, 466–68 (2013).
>
> . . .
>
> Courts in the Fourth Circuit classify a party's culpability for document destruction in one of four categories according to a fact-specific inquiry. Those categories are negligence, gross negligence, willfulness, and bad faith. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529–30 (D. Md.2010). The sanctions that Grayson seeks require a showing of willful or bad faith behavior, or that Vision's behavior was so prejudicial as to effectively deny Grayson the ability to maintain its claims. Id. at 534–36. Willful destruction of documents is "intentional, purposeful, or deliberate conduct." *Id*. at 530. For spoliation to be willful, the party must have intended to destroy the evidence. *Id*. **Bad faith spoliation is even more egregious than willful destruction of evidence. For bad faith destruction of evidence, the party must have willfully destroyed the evidence with the intention of depriving its opponent of the evidence.** *Id*.; Norton, *Fifty Shades of Sanctions*, *supra*, at 467.

*Grayson* Consulting, Inc. v. Cathcart, 2013 WL 3946203, at *7 & n.1 (D.S.C. July 31, 2013) (emphasis added). The plaintiff's conduct, here, was admittedly willful, as defined by this District and Circuit. But, to the Court, the evidence stops short of "bad faith." By even the defendant's own account, the plaintiff had engaged in an ongoing patter, albeit unwise, of purposeful deletion of his account, long before a lay person might have been aware of the types of duties actual litigation would impose. There is no evidence that any particular destruction of content was done for the sole purpose of depriving the defendants of such content. *Id*. Certainly, some of the timing is suspicious.

But, dismissal is a harsh remedy. And, the Court would agree with the plaintiff's relevancy argument, in this respect. The lawsuit is not about the plaintiff's online conduct. He was not removed from the residence hall for any online behavior or content. The content is not alleged to form any of the bases for the defendant's decision regarding the

plaintiff. That his online activity might now reinform some of the parties' view of that time frame is conceded. But, that does not make such content so central to the case that it's destruction renders any prosecution, and concomitantly, any defense, impossible for the prejudice caused. Some other remedies, not at issue now, are available including jury instruction and pleading modification.

But, dismissal is too far.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendant's motion to dismiss [Doc. 37] should be DENIED.

IT IS SO RECOMMENDED.

                                               s/Bruce Howe Hendricks
                                               United States Magistrate Judge

September 17, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).